UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA BROWN,

     Plaintiff,

v.

BRAUFMANN, LEIGHMANN & ASSOCIATES L.L.C.,
PMB FINANCIAL LLC,
BRIAN ALONZO BROWN,
MONIQUE STARR BROWN, a/k/a
MONIQUE STARR SWANS and
LISA M. BATTISE, a/k/a LISA M. EPPES,

     Defendants.

_____/

COMPLAINT

## I.    Introduction

1.     This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation

of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* Michigan Occupational Code

("MOC") M.C.L. § 339.901 *et seq.,* and Telephone Consumer Protection Act, 47 U.S.C. § 227 *et*

*seq.*

2.     Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent, ongoing criminal enterprise, through which they have conspired, and

continue to conspire, to use false representations and threats to coerce the payment of money

from consumers across the country who allegedly have failed to repay payday loans.  This

scheme, operated by defendants as well as many other entities located in and around Buffalo,

1

New York, Atlanta, Georgia and Charlotte, North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer.  The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

      3.     The use of these unlawful debt collection practices is epidemic.  See, for example,

the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

## II.   Jurisdiction

4.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 47 U.S.C. § 227 *et seq.* (TCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

## III.   Parties

5.     Plaintiff Patricia Brown is an adult, natural person residing in Kent County, Michigan. Ms. Brown is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Brown is a "consumer," "debtor" and "person" as the terms are defined and used

in the MRCPA and MOC. Ms. Brown is a "person" as the term is defined and used in the TCPA.

6.       Defendant Braufmann, Leighmann & Associates L.L.C. ("BLA") is an active

Georgia limited liability company. The registered agent for BLA is defendant Brian Alonzo

Brown, 1911 Grayson Highway, Suite #8-117, Grayson, Georgia 30017, but the "suite" is merely

a private mailbox rented by BLA from M & T Consulting, LLC, doing business as The UPS

Store #4293. BLA uses interstate commerce and the mails in a business the principal purpose of

which is the collection of debts. BLA regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another. BLA is a "debt collector" as

the term is defined and used in the FDCPA. BLA is a "regulated person" as the term is defined

and used in the MRCPA. Alternatively, BLA is a "collection agency" and "licensee" as the terms

are defined and used in MOC. BLA is a "person" as the term is defined and used in the TCPA.

7.       BLA directly and indirectly participated in the unlawful debt collection practices

to collect an alleged debt from plaintiff Patricia Brown that are described in this complaint.

8.       On February 6, 2015, BLA filed its 2015 Annual Report with the State of Georgia.

The report stated that the CEO for BLA is defendant Brian Alonzo Brown. The report was filed

by Brian Alonzo Brown, with an email address of brianbrown156@gmail.com. Mr. Brown also

has filed annual reports for BLA using an email address of brianabrown1111@gmail.com. BLA

has filed documents with the State of Georgia naming defendant Monique Starr Brown as an

agent of BLA.

9.       On June 11, 2015, the Maryland State Collection Agency Licensing Board, Office

of the Commissioner of Financial Regulation, Case No. CFR-FY2015-0016, entered an order,

finding that BLA and Brian Alonzo Brown had routinely engaged in the unlawful debt collection

practices that are described in the complaint and ordered BLA and Brian Alonzo Brown to cease

the collection of debts from Maryland consumers.

10. Defendant PMB Financial LLC ("PMB") is an active Georgia limited liability company. The articles of organization for PMB filed with the State of Georgia on February 10, 2015 state that the PMB principal place of business is located at 3915 Harrison Road, Unit 400, Loganville, Georgia 30052. The organizer and registered agent for PMB is defendant Monique Starr Brown. PMB uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. PMB regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. PMB is a "debt collector" as the term is defined and used in the FDCPA. PMB is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, PMB is a "collection agency" and "licensee" as the terms are defined and used in MOC. PMB is a "person" as the term is defined and used in the TCPA.

11. PMB directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from plaintiff Patricia Brown that are described in this complaint.

12. Defendant Brian Alonzo Brown is a natural person, age 42, purportedly residing at 3991 Oak Field Drive, Loganville, Georgia 30052-8178. Upon information and belief, Mr. Brown is the husband of defendant Monique Starr Brown. Mr. Brown is an owner, officer, member, manager, employee and/or agent of BLA and PMB. Mr. Brown uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Brown regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another. Mr. Brown is a "debt collector" as the term is defined and used in the FDCPA. Mr. Brown is a "regulated person" as the term is defined and used in the

MRCPA. Alternatively, Mr. Brown is a "collection agency" and "licensee" as the terms are defined and used in MOC. Mr. Brown is a "person" as the term is defined and used in the TCPA.

13. Mr. Brown (a) created the collection policies and procedures used by BLA and PMB and their employees and agents, (b) managed the daily collection operations of BLA and PMB, (c) oversaw the application of the collection policies and procedures used by BLA and PMB and their employees and agents, (d) ratified the unlawful debt collection policies and procedures used by BLA and PMB and their employees and agents, as well as the other defendants to this lawsuit, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by BLA and PMB and their employees and agents, all who participated and acted in concert, to collect an alleged debt from plaintiff Patricia Brown as described in this complaint.

14. Mr. Brown directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from plaintiff Patricia Brown that are described in this complaint.

15. Defendant Monique Starr Brown, also known as Monique Starr Swans, is a natural person, age 41, purportedly residing at 3991 Oak Field Drive, Loganville, Georgia 30052-8178. Upon information and belief, Ms. Brown is the wife of defendant Brian Alonzo Brown. Ms. Brown is an owner, officer, member, manager, employee and/or agent of BLA and PMB. Ms. Brown uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Brown regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another. Ms. Brown is a "debt

collector" as the term is defined and used in the FDCPA.  Ms. Brown is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Ms. Brown is a "collection agency" and "licensee" as the terms are defined and used in MOC.  Ms. Brown is a "person" as the term is defined and used in the TCPA.

16.     Defendant Monique Starr Brown (a) created the collection policies and procedures used by BLA and PMB and their employees and agents, (b) managed the daily collection operations of BLA and PMB, (c) oversaw the application of the collection policies and procedures used by BLA and PMB and their employees and agents, (d) ratified the unlawful debt collection policies and procedures used by BLA and PMB and their employees and agents, as well as the other defendants to this lawsuit, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by BLA and PMB and their employees and agents, all who participated and acted in concert, to collect an alleged debt from plaintiff Patricia Brown as described in this complaint.

17.     Defendant Monique Starr Brown directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from plaintiff Patricia Brown that are described in this complaint.

18.     Defendant Lisa M. Battise, also known as Lisa M. Eppes, is a natural person, age 45, purportedly residing at 1964 Ivy Branch Lane, Loganville, Georgia 30052-5855.  Ms. Battise also has been known as Lisa Robertson, Lisa Smith and Lisa Fequiere.  Ms. Battise claims to be the Managing Director of BLA.  Ms. Battise is an owner, officer, member, manager, employee and/or agent of BLA and PMB.  Ms. Battise uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Ms. Battise regularly collects or

attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due

another.  Ms. Battise is a "debt collector" as the term is defined and used in the FDCPA.  Ms.

Battise is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Ms.

Battise is a "collection agency" and "licensee" as the terms are defined and used in MOC.  Ms.

Battise is a "person" as the term is defined and used in the TCPA.

19.     Ms. Battise (a) created the collection policies and procedures used by BLA and

PMB and their employees and agents, (b) managed the daily collection operations of BLA and

PMB, (c) oversaw the application of the collection policies and procedures used by BLA and

PMB and their employees and agents, (d) ratified the unlawful debt collection policies and

procedures used by BLA and PMB and their employees and agents, as well as the other

defendants to this lawsuit, and (e) had knowledge of, approved and ratified the unlawful debt

collection practices used by BLA and PMB and their employees and agents, all who participated

and acted in concert, to collect an alleged debt from plaintiff Patricia Brown as described in this

complaint.

20.     Ms. Battise directly and indirectly participated in the unlawful debt collection

practices to collect an alleged debt from plaintiff Patricia Brown that are described in this

complaint.

21.     On August 24, 2015, defendant Brian Alonzo Brown filed Articles of

Organization with the State of Georgia for a barbershop named Tha Chophouse LLC ("Tha

Chophouse"), listing a principal office address of 1911 Grayson Highway, Suite #8-117,

Grayson, Georgia 30017, but the "suite" is merely a private mailbox rented by defendants from

M & T Consulting, LLC, doing business as The UPS Store #4293.  Tha Chophouse actually does

business from a strip mall located at 1154 Lawrenceville Highway, Suite 2019, Lawrenceville, Georgia 30045. The registered agent for Tha Chophouse is defendant Monique Starr Brown, 3915 Harrison Road, Unit 400, Loganville, Georgia 30052, which upon information and belief is the true address from which defendants conduct their extortionate debt collection operation.

22.     Defendants have used multiple, unregistered names when collecting debts from consumers in efforts to conceal their identities.  Those names include Bassett, Holiver & Levermann, Berlinsky, Huffman & Levitt, BHL, Klause & Associates and Clearemont & Associates. Defendants sometimes have represented to consumers that Klause & Associates does business at 5456 Peachtree Boulevard, Suite 195, Chamblee, Georgia 30341, but the "suite" is merely a private mailbox rented by defendants from Lotau Ventures, LLC, doing business as The UPS Store #1140.

23.     Defendants have used multiple telephone numbers when collecting debts from consumers, including 206-686-4333, 208-908-0744, 347-426-1953, 470-315-3372, 470-545-0385, 470-545-0985, 559-272-4599, 602-301-4700, 607-821-1880, 612-354-4016, 650-226-8344, 678-951-0720, 720-446-0563, 720-446-0615, 724-594-0466, 770-609-6330 and 831-275-5959.

24.     Defendants maintain an internet domain name, www.pmbfinancial.net, which they created on March 31, 2015 and registered through Domains By Proxy, LLC (which is owned by GoDaddy), in efforts to conceal their true identities and location.  Defendants also maintain an internet domain name, www.bla.com.co, which they also registered through Domains By Proxy, LLC, in efforts to conceal their true identities and location.  Defendants use these internet domain name to obtain service through GoDaddy to send and receive emails in furtherance of their

9

extortionate debt collection operation. In October and November of 2015, defendants posted information on the internet website, www.craigslist.org, advertising employment opportunities for debt collectors and instructing applicants to email their resumes to defendants at info@bla.com.co.  On July 26, 2013, defendant Brian Alonzo Brown registered an internet domain name, www.blallc.biz, with a registrant's address of 3905 Harrison Road, Unit 500, Loganville, Georgia 30052, which was the location of defendants' call center until approximately April of 2015, when they re-located their call center a few doors down to its current location at 3915 Harrison Road, Unit 400, Loganville, Georgia 30052.  On April 3, 2015, Mr. Brown posted photographs of defendants' current call center on his Facebook page, https://www.facebook.com/profile.php?id=100001252159388.  Several of the photographs are attached hereto as Exhibit A.

25.     Defendants are intricately bound together and combine their efforts in concerted attempts to collect debts allegedly owed by consumers throughout the United States.

26.     Although each corporate entity is registered as an independent entity, all defendants share the same telephone numbers, office space, private mail boxes, equipment, staff, management and unlawful debt collection practices, scripts and tactics.

27.     Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally

28.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000).

29.     A shareholder, owner, officer, member, manager, employee or agent of a

corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

30.    On or about May 9, 2012, plaintiff Patricia Brown borrowed money from Allied Check Cashing Michigan LLC, doing business as Allied Cash Advance ("Allied"), and located at 2440 28th Street, S.E., Grand Rapids, Michigan.  Ms. Brown borrowed and used the money for personal, family and household purposes.  Ms. Brown borrowed the money in what is commonly called a "payday loan," at an annual interest rate that exceeded 300 percent.  Allied assigned to the transaction an account number of 37150180. In the transaction, Ms. Brown became obligated to repay Allied the sum of $312.83.

31.    Ms. Brown was unable to repay her debt to Allied.

32.    Allied charged off the account and related debt.

33.    On December 20, 2012, Allied sold and transferred the account to an entity named

National Credit Adjusters, L.L.C. ("NCA").

34.     On December 30, 2012, NCA placed the account for collection with an entity named M. Callaghan & Assoc., LLC ("Callaghan"). Callaghan was unable to collect the debt. On April 3, 2013, Callaghan was required to return the account to NCA.

35.     On May 8, 2013, NCA placed the account for collection with a second entity named JDS Recovery L.L.C. ("JDS"). JDS was unable to collect the debt. On September 10, 2013, JDS was required to return the account to NCA.

36.     NCA has never placed the account for collection with any other entity. NCA has never sold the account to any other entity. NCA remained the owner of the account. In 2013, NCA agreed that Ms. Brown owed no money to NCA or to any other entity in connection with the account. NCA agreed that the account and related debt were satisfied.

37.     Despite the foregoing, and somewhere along the way, Ms. Brown's account information was stolen and has been sold or otherwise transferred multiple times to various entities, which have repeatedly and unlawfully contacted Ms. Brown and criminally threatened Ms. Brown in connection with an account the entities have no right to collect in efforts to coerce Ms. Brown to pay money she does not owe.

38.     Defendants have somehow stolen or otherwise acquired Ms. Brown's personal and financial information and have used that stolen information to engage in a criminal enterprise and to criminally extort money from Ms. Brown as described in this complaint.

39.     On or about October 14, 2015, defendants placed a call to Ms. Brown's cellular telephone and used a pre-recorded script and computer-generated voice to leave the following message on Ms. Brown's voice mail: "This message is intended for Patricia Brown. My name is

Kim Preston. I received a fax order regarding you civil complaint that was filed against you. I've been retained to serve you with documents to appear in court, either at you residence or your place of employment. If you have any questions or concerns about the complaint, press 1 to be connected, or call 831-275-5959. When calling, please reference your Case Number 2015-412880."

40.     On November 2, 2015, Ms. Brown placed a call to telephone number 831-275-5959 and spoke with defendants' employee and agent who identified himself as Vincent Bolden at extension 3005.  In the ensuing conversation, defendants' employee and agent made the following representations to Ms. Brown:

a)      Ms. Brown's "Case Number" is 2015-412880.

b)      "I'm the Division Attorney with Summons and Processing."

c)      "You have a civil suite filed against you with two charges."

d)      "You are being charged with breach of contract and malicious intent to commit fraud against a financial institution."

e)      "We are calling about the Allied Cash Advance that you obtained on May 9, 2012 and didn't pay back."

f)      "It is out of collections now, attorneys have took up this debt and they are definitely preparing to summons you to court for this outstanding debt."

g)      "This account is coming out of collections and into litigation."

h)      "You owe $1,284.16, but they are willing to settle today for $500.00."

i)      "The attorneys will be sending out your court paperwork Wednesday morning at 11:00 a.m. Eastern Standard Time."

13

j)      "I work for Klause & Associates. I have been retained by attorneys."

k)      "Attorneys took over this debt because they're gonna get it through the courts."

l)      "You will be garnished and the debt will be reported to the credit bureaus."

41.      On November 2, 2015, in response to defendants' extortionate threats, and in order to determine defendants' identities, a payment of $60.00 was made to defendants by debit card. According to Chase Bank, the entity that received the payment was "B L & Associates LLC, 470-545-0385, Loganville, GA."

42.      On November 2, 2015, defendants caused an email to Ms. Brown, with attached documents containing a schedule for Ms. Brown to make additional payments to defendants. The email stated that the documents were being sent by "PMB Financial" with a reply email address of info@pmbfinancial.net. The documents stated that Ms. Brown's payments "will be processed through BL & Associates." The documents stated that Ms. Brown's "Current Creditor" was "Klause & Associates." The documents stated that the documents originated with "PMB Financial, 3991 Oak Field Drive, Loganville, Georgia 30052," which is the residential address of defendants Brian Alonzo Brown and Monique Starr Brown. The documents provided a contact telephone number of 831-275-5959. A copy of the email and documents are attached hereto as Exhibit B.

43.      The email and documents attached as Exhibit A establish that defendants are intricately bound together and combine their efforts in concerted attempts to collect debts, and operate collectively and in such as way that they are collecting debts for the benefit of each other

14

and as a common enterprise.

44.     In early December of 2015, defendants placed multiple telephone calls to Ms.

Brown's cellular telephone in connection with their efforts to collect the alleged debt from Ms.

Brown.

45.     On or about December 9, 2015, Ms. Brown placed a call to telephone number

831-275-5959 and spoke with defendants' employee and agent who identified himself as Vincent

Bolden at extension 3005.  In the ensuing conversation, defendants' employee and agent made

the following representations to Ms. Brown:

> a)     Defendants had attempted to debit $100.00 from Ms. Brown's account on
>
> December 7, 2015, but the request for payment was declined.
>
> b)     Ms. Brown was in a "second default" and her "paperwork was being
>
> forwarded to the attorneys for further litigation."
>
> c)     Ms. Brown's debt had "escalated" and "the attorneys will seek the full
>
> balance against you of $2,750.00."
>
> d)     "The attorneys will get three times the amount from you through the
>
> courts."

46.     On or about December 9, 2015, defendants' employee and agent, Vincent Bolden,

placed a call to Ms. Brown's cellular telephone and left the following message on Ms. Brown's

voice mail: "Miss Patricia Brown, I guess we just spoke ma'am. I don't know if the girl said you

wasn't going to pay, but either way, we will just take it to the courts. So if your intention is not to

pay your next payment, you can let me know now ma'am and we can go ahead and send the

process server out to your current address we have on North Breton Court, Grand Rapids,

Michigan 49508. Call and let me know. We'll get you served today."

47.     The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from consumers through the use of false threats, intimidation, criminal extortion, and unlawful harassment of the consumers and their relatives and other third parties.  Discovery is expected to disclose that defendants have coerced the payment of hundreds of thousands of dollars from thousands of consumers using the same unlawful tactics that are described in this complaint.

48.     Defendants and their employees and agents in the described communications failed to meaningfully identify themselves and the their companies.

49.     Defendants and their employees and agents in the described communications falsely represented the amount of the alleged debt.

50.     Defendants and their employees and agents in the described communications falsely represented that Ms. Brown owed the alleged debt.

51.     Defendants and their employees and agents in the described communications falsely represented that defendants owned the alleged debt.

52.     Defendants and their employees and agents in the described communications falsely represented that defendants had the right to collect the alleged debt.

53.     Defendants and their employees and agents in the described communications falsely represented that a lawsuit would be filed against Ms. Brown to collect the alleged debt.

54.     Defendants and their employees and agents in the described communications falsely represented that a lawsuit already had been filed against Ms. Brown to collect the alleged

16

debt.

55.     Defendants and their employees and agents in the described communications falsely represented that derogatory information regarding the alleged debt would appear on Ms. Brown's credit history.

56.     Defendants and their employees and agents in the described communications falsely represented that defendants retain lawyers to collect debts in Michigan.

57.     Defendants and their employees and agents in the described communications falsely represented that defendants are lawyers.

58.     Defendants and their employees and agents in the described communications falsely represented that lawyers own the alleged debt.

59.     Defendants and their employees and agents in the described communications falsely represented that lawyers are involved in efforts to collect the alleged debt.

60.     Defendants and their employees and agents in the described communications falsely represented that they had been retained by lawyers to collect the alleged debt.

61.     Defendants and their employees and agents in the described communications falsely represented that defendants intended to retain lawyers to collect the alleged debt.

62.     Defendants and their employees and agents in the described communications falsely represented that Ms. Brown was going to be served with a summons and complaint.

63.     Defendants did not intend to file a lawsuit against Ms. Brown in any Michigan court in efforts to collect the alleged debt.

64.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

65.     Defendants and their employees and agents in the described communications

17

falsely represented that there were legal claims pending against Ms. Brown.

66.     Defendants and their employees and agents in the described communications falsely represented that criminal charges were pending against Ms. Brown.

67.     Defendants and their employees and agents in the described communications falsely represented that criminal charges would be filed against Ms. Brown.

68.     Defendants and their employees and agents in the described communications falsely represented that Ms. Brown had committed a crime.

69.     Defendants and their employees and agents in the described communications falsely represented that Ms. Brown was going to be arrested and prosecuted for having committed a crime.

70.     Defendants and their employees and agents in the described communications falsely represented that if Ms. Brown did not pay money to defendants, then Ms. Brown's property would be garnished.

71.     The FDCPA states that it is unlawful for a debt collector to use or threaten to use criminal means to harm the reputation or property of any person. 15 U.S.C. § 1692d(1).

72.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

73.     The FDCPA states that it is unlawful for a debt collector to falsely represent or falsely imply that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

74.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

75.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

76.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

77.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

78.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

79.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

80.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

81.     The FDCPA states that it is unlawful for a debt collector to falsely represent or falsely imply that the consumer committed any crime or other conduct in order to disgrace the consumer.  15 U.S.C. § 1692e(7).

82.     The FDCPA states that it is unlawful for a debt collector to communicate or

threaten to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

83.    The FDCPA states that it is unlawful for a debt collector to use any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court of the United States or any State, or which creates a false impression as to its source, authorization, or approval. 15 U.S.C. § 1692e(9).

84.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

85.    The FDCPA states that it is unlawful for a debt collector to fail to disclose in an oral communication with the consumer that the communication is from a debt collector and that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11)

86.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

87.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

88.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

89.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by

law.  15 U.S.C. § 1692f(1).

90.    Defendants have violated the FDCPA, 15 U.S.C. §§ 1692d(1) and (6),

1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (9), (10), (11), (13) and (14), and

1692f and 1692f(1).

91.    Defendants and their employees and agents falsely accused Ms. Brown of

having committing a crime.  Ms. Brown's alleged failure to repay the alleged debt was not

commit a crime under Michigan law because the Michigan Deferred Presentment Service

Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower

in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's

check is dishonored."  M.C.L. § 487.2158(4).

92.    Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall,

either orally or by a written or printed communication, maliciously threaten to accuse

another of any crime or offense . . .  with intent to extort money or any pecuniary

advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the

state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is

not made.  *People v. Maranian*, 359 Mich. 361 (1960).

93.    Defendants and their employees and agents attempted to criminally extort money

from Ms. Brown and violated M.C.L. § 750.213.

94.    The FDCPA requires that, within five days of the initial communication with a

consumer in connection with the collection of any debt, a debt collector shall, unless the required

21

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

95.     Defendants failed to provide Ms. Brown with the information it was required to provide by the FDCPA, 15 U.S.C. § 1692g(a) and thereby violated the FDCPA.

96.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, yet to be identified in discovery, are engaged in a criminal organization and scheme, through which they directly and indirectly conspire to purchase and collect delinquent payday loans, as well as to collect money in connection with accounts they do not own or on which no money is owed, by using the above-described debt collection practices, in violation of the FDCPA (and various state laws, including Michigan law), and that include the use of scripted threats of faked litigation and criminal extortion, and that include demands for payments in amounts that exceeded the amount expressly authorized by the agreement creating the debt or permitted by law.   Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, have used the same script and same unlawful, criminal tactics, to collect or attempt to collect money from more than one thousand persons.  Defendants' criminal enterprise remains active and ongoing.

97.     Each defendant and each defendant's employees, managers, owners, agents, attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

98.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

99.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

100.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

101.     Defendants used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to make the above-described calls to the cellular telephone belonging to Ms. Brown.

102.     Defendants used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to make the above-described calls to the cellular telephone belonging to Ms. Brown.

103.     Defendants used an "artificial or prerecorded voice" to communicate by telephone with Ms. Brown after making the above-described calls to the cellular telephone belonging to Ms. Brown.

104.     None of the above-described calls made by defendants to Ms. Brown was made for "emergency purposes" as the phrase is used in the TCPA, 47 U.S.C. § 227(b)(1)(A).

105.     Defendants did not obtain Ms. Brown's "prior express consent" as the phrase is used in the TCPA, 47 U.S.C. § 227(b)(1)(A) to make the above-described calls to Ms. Brown's cellular telephone.

106.     Defendants did not have an "established business relationship" with Ms. Brown

within the meaning of 47 U.S.C. § 227(a)(4) when defendants made the above-described calls to Ms. Brown's cellular telephone.

107.    No defendants is a "tax exempt nonprofit organization" within the meaning of 47 U.S.C. § 227(a)(4).

108.    Defendants have violated the TCPA.

109.    Defendants wilfully, knowingly and intentionally violated the TCPA.

110.    As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

111.    Plaintiff incorporates the foregoing paragraphs by reference.

112.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)     Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)     Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

### Count 2– Michigan Regulation of Collection Practices Act

113.    Plaintiff incorporates the foregoing paragraphs by reference.

114.    Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)     Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)     Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)     Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)     Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the

seizure, garnishment, or sale of the debtor's property;

e)   Defendants violated M.C.L. § 445.252(g) by communicating with a debtor

without accurately disclosing the caller's identity;

f)   Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or

abusive method to collect a debt; and

g)   Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to M.C.L. § 445.257(2);

b)   Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)   Statutory damages pursuant to M.C.L. § 445.257(2);

d)   Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)   Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

115.   Plaintiff incorporates the foregoing paragraphs by reference.

116.   Each defendant has violated the MOC.  Each defendant's violations of the MOC

include, but are not necessarily limited to, the following:

a)   Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)   Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)   Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

d)    Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)    Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)    Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)    Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)    Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to M.C.L. § 339.916;

b)    Treble the actual damages pursuant to M.C.L. § 339.916;

c)    Statutory damages pursuant to M.C.L. § 339.916;

d)    Equitable relief pursuant to M.C.L. § 339.916; and

e)    Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 4 – Telephone Consumer Protection Act

117.    Plaintiff incorporates the foregoing paragraphs by reference.

118.    Each defendant has violated the TCPA.  Defendants' violations of the TCPA

include, but are not necessarily limited to, the following:

a)      Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages or $500.00 for each violation, whichever is greater, pursuant to

47 U.S.C. § 227(b)(3)(B);

b)      Treble actual damages or $1,500.00 for each violation, whichever is greater,

pursuant to 47 U.S.C. § 227(b)(3)(C);

c)      Costs; and

d)      Such further relief as the court deems just and proper.

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: January 25, 2016                    /s/ Phillip C. Rogers
                                           Phillip C. Rogers (P34356)
                                           Attorney for Plaintiff
                                           40 Pearl Street, N.W., Suite 336
                                           Grand Rapids, Michigan 49503-3026
                                           (616) 776-1176
                                           ConsumerLawyer@aol.com